IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

WESTERN WORLD INSURANCE     *
COMPANY, INC.     *
    *
    v.     *     Civil No. CCB-06-983
    *
WILLIAM E. GREENE, JR.     *
    *
    *
    *****

## MEMORANDUM

This declaratory judgment action involves a dispute between the plaintiff, Western World

Insurance Company, Inc. ("Western World"), and the defendant, William E. Greene, Jr.

("Greene"), over Western World's liability under an insurance policy and endorsement it issued

to Greene's former landlord.  Now pending before me is Western World's motion for summary

judgment.  For the reasons that follow, I will grant Western World's motion.

## BACKGROUND

Greene resided at 3512 Woodbrook Avenue in Baltimore, Maryland from July 1980 until

February 1983.  (Greene's Supp. Ans. Interrogs. # 1, Ex. to Pl.'s Mem.)  The owner of that

residence, Michael Sopher ("Sopher"), insured the property through a series of policies obtained

from Western World.  (Hazard Aff. ¶ 3, Ex. to Pl.'s Mem.)  Coverage under the initial one-year

policy, which limited Western World's liability to $50,000 per occurrence, began on October 26,

1978.  (*Id.*)  Sopher renewed the policy annually for four years.  (*Id.*)

Policy # GLA 148467 ("Final Policy") ran from October 26, 1982 until October 26, 1983

and initially contained the same liability limit as the earlier policies.  (*Id.*)  On April 28, 1983,

midway through the Final Policy's coverage period, Sopher and Western World executed an

-1-

endorsement increasing the liability limit to $300,000.  (Endorsement, Ex. to Pl.'s Mem.)  The

endorsement read:

> In consideration of an additional premium of $406.00, $208.00 due herewith it is hereby understood and agreed the limit of liability is increased to 300,000/5,000 effective 4/22/83 making annual premium 1208.00 in lieu of 802.00.

(*Id.*)  The endorsement also stated, "All other terms and conditions remain unchanged."  (*Id.*)

In February 2001, Greene filed a civil action in Baltimore City Circuit Court against

Sopher's estate alleging injuries related to lead poisoning suffered while living at 3512

Woodbrook Avenue.[1]  (Compl., Ex. to Pl.'s Mem.)  As the insurer of that property, Western

World offered Greene $200,000 to settle his claims against Sopher's estate.  (Letter from

Howard J. Schulman to Saul E. Kerpelman (Mar. 21, 2006), Ex. to Pl.'s Mem.)  Western

World's offer represented the proceeds of the four consecutive $50,000 insurance policies,

including the Final Policy, in effect while Greene resided at Sopher's property.  (*Id.*)  Greene's

counsel rejected Western World's proposal and insisted on a $450,000 payment to reflect the

total of three $50,000 policies and the $300,000 limit under the Final Policy.  (Letter from Saul

E. Kerpelman to Howard J. Schulman (Mar. 23, 2006), Ex. to Pl.'s Mem.)

In subsequent correspondence, Greene's counsel acknowledged that his client moved

from 3512 Woodbrook Avenue in February 1983 and that the Final Policy's liability limit

increased in April of that year.  (Letter from Saul E. Kerpelman to Howard J. Schulman (Apr.

10, 2006), Ex. to Pl.'s Mem.)  Greene's counsel insisted that because the endorsement stated that

"[a]ll other terms and conditions remain unchanged," the increase to $300,000 related back to the

beginning of the policy period in October 1982 and therefore applied to Greene.  (*Id.*)

---

[1] Sopher passed away in January 1989.  (Death Certificate, Ex. to Pl.'s Mem.)

Convinced that the Final Policy's increased liability limit was not effective until after Greene moved, Western World filed the instant action requesting a declaration that the limit of liability for occurrences at 3512 Woodbrook Avenue prior to April 22, 1983 is $50,000 and that Greene's recovery in the underlying lead poisoning litigation is capped at $200,000.

## ANALYSIS

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment:

> shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in her favor without weighing the evidence or assessing the witness' credibility," *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002), but the court also must abide by the "affirmative obligation of the trial judge to prevent factually

-3-

unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal

quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and

citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

As a general rule, Maryland courts do not construe insurance policies against the insurer.

*Cheney v. Bell Nat'l Life Ins. Co.*, 556 A.2d 1135, 1138 (Md. 1989).  Rather, "[i]nsurance

contracts are treated as any other contract, and [a court] measure[s] such an agreement by its

terms." *United Servs. Auto. Ass'n v. Riley*, 899 A.2d 819, 833 (Md. 2006).  Absent evidence that

the parties intended the policy's terms to be read in a special or technical sense, the terms should

be accorded their customary, ordinary, and accepted meaning.  *Id.*; *Cheney*, 556 A.2d at 1138.

"'[W]hen the language of the contract is plain and unambiguous there is no room for

construction, and a court must presume that the parties meant what they expressed.'" *United

Servs. Auto. Ass'n*, 899 A.2d at 833 (alteration in original) (quoting *Towson Univ. v. Conte*, 862

A.2d 941, 947 (Md. 2004)).  A contract is ambiguous only if, "'when read by a reasonably

prudent person, it is susceptible of more than one meaning.'" *Id.* (quoting *Calomiris v. Woods*,

727 A.2d 358, 363 (Md. 1999)).  In that case, extrinsic evidence may be offered to ascertain the

parties' intent.  *Beale v. Am. Nat'l Lawyers Ins. Reciprocal*, 843 A.2d 78, 89 (Md. 2004).  Only

where ambiguity persists after consideration of such evidence will the insurance policy be

construed against the insurer as drafter of the document.  *Id.*

With these principles in mind, I find that the Final Policy's endorsement increased the

limit of liability to $300,000 effective April 22, 1983 and that all occurrences prior to that date

are subject to the original $50,000 limit.  A reasonable person could not interpret the

endorsement's terms any other way.  I also note that Western World and Sopher agreed to the

endorsement six months into the Final Policy's one-year term.  The fact that Western World charged Sopher only $208 – roughly half of the $406 increase in annual premium – offers additional support for the conclusion that the increased limit of liability did not relate back to the beginning of the Final Policy's term.  Presumably, had the parties intended the increased limit to span the policy's entire term, Sopher would have owed the full premium.

The endorsement's statement that "[a]ll other terms and conditions remain unchanged" does not alter my conclusion.  Greene contends that this phrase demonstrates that the increased liability limit related back to the Final Policy's inception.  (Def.'s Opp'n Mem. at 5-6.) Although "'a contract must be construed as a whole, and effect given to every clause and phrase,'" *Phila. Indem. Ins. Co. v. Md. Yacht Club, Inc.*, 742 A.2d 79, 86 (Md. Ct. Spec. App. 1999) (quoting *Balt. Gas & Elec. Co. v. Commercial Union Ins. Co.*, 688 A.2d 496 (Md. Ct. Spec. App. 1997)), it is Greene's reading of the endorsement that violates this principle; to find that the $300,000 limit related back to October 26, 1982 would render the endorsement's clearly stated effective date meaningless.  In all likelihood, the language that Greene seizes upon simply referred to any number of other terms under the Final Policy, including the property insured, dates of coverage, and so forth.

Because I find no ambiguity regarding the endorsement's effective date, I need not consider extrinsic evidence or construe the policy against Western World as its drafter.  *See Beale*, 843 A.2d at 89.  The Maryland Court of Appeals' decision in *Beale* is therefore distinguishable, because in that case the court found certain terms in a professional liability insurance policy ambiguous.  *Id.*  The instant action requires the interpretation of entirely different terms from those construed in *Beale*, and despite Greene's protestations to the contrary,

the endorsement's effective date is unambiguous.[2] *See Belleview Constr. Co. v. Rugby Hall Cmty. Ass'n, Inc.*, 582 A.2d 493, 496 (Md. 1990) ("An ambiguity does not exist simply because a strained or conjectural construction can be given to a word.").

Greene resided at 3512 Woodbrook Avenue from July 1980 until February 1983. (Greene's Supp. Ans. Interrogs. # 1, Ex. to Pl.'s Mem.)  Because he moved before the $300,000 limit on liability become effective on April 22, 1983, Greene may only recover $50,000 under the Final Policy's original limit.  Considering the three other $50,000 policies that preceded the Final Policy, Western World's total liability for the years in which Greene lived at 3512 Woodbrook Avenue is $200,000.

Greene's alternative argument that Western World owes a total of $250,000 also is without merit.  (Def.'s Opp'n Mem. at 9.)  Greene maintains that he suffered *in utero* exposure to lead paint at 3512 Woodbrook Avenue and that he may therefore avail himself of a fifth $50,000 insurance contract: the initial policy, which ran from October 26, 1978 until October 26, 1979. (*Id.*)  The case cited by Greene in support of this proposition, *United Services Automobile Ass'n v. Riley*, 899 A.2d 819 (Md. 2006), has no bearing on his claim.  In that case, a landlord's insurer sought a declaration capping its liability in an underlying lead paint action at the limits of a single policy, rather than the cumulative limits from consecutive policies.  *Id.* at 821-22.  The Court of Appeals ultimately rejected the insurer's position.[3]  *Id.* at 832-35.  In also finding that

---

[2] Greene attacks an affidavit submitted by a Western World executive describing the company's practices as insufficient to resolve any ambiguity in the interpretation of the endorsement's effective date.  (Def.'s Opp'n Mem. at 8.)  As stated above, however, the endorsement's effective date is not ambiguous and thus can be construed without resorting to extrinsic evidence.

[3] In light of *United Services Automobile Ass'n*, Western World does not argue that its liability is capped at the limit of a single policy.  Thus, the issue is simply whether Western World's liability consists of four rather than five "stacked" policy limits.

fact issues remained regarding when the lead poisoning occurred, the court noted that evidence of *in utero* exposure to lead-based paint had been submitted in the underlying action. *Id.* at 827. Greene offers no explanation as to how this discussion supports his position.

Indeed, until now, Greene has never alleged *in utero* exposure to lead-based paint. The complaint and discovery responses filed in the underlying action omit any claims of *in utero* exposure. Additionally, in rejecting Western World's offer to settle the underlying action, Greene's counsel merely demanded the proceeds from the *four* insurance policies in existence while his client lived at 3512 Woodbrook Avenue. (Letter from Saul E. Kerpelman to Howard J. Schulman (Mar. 23, 2006), Ex. to Pl.'s Mem.) Having never before raised the allegations of *in utero* exposure, Greene may not do so presently to oppose Western World's motion for summary judgment. *See McKenzie v. Comcast Cable Commc'ns, Inc.*, 393 F. Supp. 2d 362, 373 (D. Md. 2005) (refusing to consider a claim raised for the first time in an opposition to summary judgment); *see also Tucker v. Union of Needletrades, Indus., & Textile Employees*, 407 F.3d 784, 787-89 (6th Cir. 2005) (affirming a district court's refusal to entertain an argument raised solely in opposition to motion for summary judgment). In any event, Greene adduces no evidence in support of his allegations and thus fails to demonstrate the existence of a genuine issue for trial. *See Bouchat*, 346 F.3d at 525-26 (explaining that "unsupported speculation" will not defeat a motion for summary judgment).

For the foregoing reasons, I conclude that the Final Policy's liability limit is $50,000 for an occurrence taking place before April 22, 1983 and that the total liability for the four policies in existence during Greene's period of residence at 3512 Woodbrook Avenue is $200,000.

A separate Order follows.

_\_\_March 13, 2007\_\__                    _____/s/_____
Date                                        Catherine C. Blake
                                            United States District Judge